# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>PSA, INC.,<br>ETS PAYPHONES, INC.,<br>ETS VENDING, INC., ET AL.,<br><br>               Debtors. | CASE NO. 00-3570 (JCA)<br><br>CHAPTER 11<br>(JOINTLY ADMINISTERED<br>Case Nos. 00-3570 through<br>00-3572 and 00-3718 through<br>00-3725) |

## FIRST AMENDED JOINT REORGANIZATION PLAN SUBMITTED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

E. Penn Nicholson
Shannon Lowry Nagle
POWELL, GOLDSTEIN,
FRAZER & MURPHY LLP
Sixteenth Floor
191 Peachtree Street, N.E.
Atlanta, GA 30303
Telephone: (404) 572-6600
Telecopier: (404) 572-6999

- and -

Brendan Linehan Shannon (No. 3136)
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
1100 N. Market Street, 11th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

Kirk L. Brett
DUVAL & STACHENFELD LLP
300 East 42nd Street
Third Floor
New York, New York 10017
Telephone: (212) 883-1700
Telecopier: (212) 883-8883

- and -

Frederick B. Rosner (No. 3995)
WALSH MONZACK & MONACO P.A.
400 Commerce Center
1201 Orange Street
Wilmington, Delaware 19801
Telephone: (302) 656-8162
Telecopier: (302) 656-2769

Counsel for the Official Committee
of Unsecured Creditors

Dated: July 25, 2001



## INTRODUCTION

ETS Payphones, Inc.; PSA, Inc.; ETS Vending, Inc., ETS Management, LLC; Americom, Inc.; City Public Phones, Inc.; ETS Payphones of California, Inc.; MSC National, Inc.; S and R Telecommunications Consultants, Inc.; TSC Payphone Corp.; and Phoenix Telecom of Puerto Rico, Inc., the debtors and debtors in possession, (the "Debtors") and the Official Committee of Unsecured Creditors (the "Creditors' Committee") jointly propose the following Joint Reorganization Plan (the "Joint Plan") for the resolution and full satisfaction and discharge of all Claims against and Interests in Debtors. Reference is made to the Disclosure Statement with respect to this Joint Plan for a discussion of, among other things, Debtors' history, businesses, properties, results of operations and projections for future operations, and for a summary and analysis of this Joint Plan and certain related matters. Debtors and the Creditors' Committee are the proponents of this Joint Plan within the meaning of section 1129 of the Bankruptcy Code. All Holders of Claims against and Interests in Debtors entitled to vote on this Joint Plan are encouraged to read this Joint Plan and the Disclosure Statement in their entirety before voting to accept or reject this Joint Plan. Subject to certain restrictions and requirements set forth in this Joint Plan, Debtors and Creditors' Committee reserve the right to alter, amend, modify, revoke or withdraw this Joint Plan prior to its consummation.

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.   Definitions

For purposes of this Joint Plan, each capitalized term used herein shall have the meaning set forth below.

1.   *Adjusted Amount* means, with respect to a Disputed Claim, (a) to the extent such Disputed Claim is a liquidated Claim, the maximum Face Amount of such Disputed Claim as asserted in the relevant proof of Claim or such other amount as the Bankruptcy Court shall determine on or prior to the Effective Date in accordance with the Bankruptcy Code is adequate for the purpose of determining the amount of Cash or number of shares of Reorganized ETS Stock to be deposited in the Disputed Claims Reserve Accounts, and (b) to the extent such Disputed Claim is an unliquidated or contingent Claim, an amount that the Bankruptcy Court shall determine on or prior to the Effective Date in accordance with the Bankruptcy Code is adequate for the purpose of determining the amount of Cash or number of shares of Reorganized ETS Stock to be deposited in the Disputed Claims Reserve Accounts, and in each such case, such amount shall be the maximum allowable amount of such Claim unless the Bankruptcy Court shall order otherwise.

2.   *Administrative Expense Claim* means a Claim for payment of administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the

no later than thirty (30) days after the Effective Date, and (b) with respect to a Claim that is a Disputed Claim as of the Effective Date or is, not an Allowed Claim otherwise, a date upon which Distributions are to be made by the Disbursing Agent, occurring as soon as practical after the date on which such Claim becomes an Allowed Claim, and that is within forty-five (45) days after the date on which such Claim becomes an Allowed Claim.

35. *Effective Date* means a date selected by Debtors and the Committee that is no more than ten (10) Business Days following the date on which all conditions set forth in Article VIII of Joint Plan have been satisfied or, if capable of being waived, duly and expressly waived pursuant to the Joint Plan.

36. *Estates* means the estates created for Debtors in their Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code, as substantively consolidated for purposes of the Joint Plan.

37. *ETS* means ETS Payphones, Inc., a Georgia corporation, one of the debtors in possession.

38. *Exchange Act* means the Securities and Exchange Act of 1934, as now in effect or hereinafter amended.

39. *Face Amount* means the undisputed liquidated principal amount of a Claim.

40. *Final Order* means an order of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (b) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing in form and substance satisfactory to Debtors and Creditors' Committee; or (c) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which: (i) such order of the Bankruptcy Court shall have been affirmed by the highest Bankruptcy Court to which such order is appealed; (ii) certiorari has been denied as to such order; or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such action having been taken.

41. *General Unsecured Claim* means any Claim against Debtors that is not an Administrative Expense Claim, a Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Payphone Investor Claim, an Intercompany Claim, or a Non-Debtor Affiliate Claim. A Claim arising from the rejection of an unexpired lease or executory contract shall constitute a General Unsecured Claim.

42. *General Unsecured Distributions* means the following: (a) on the Distribution Date, the sum of $975,000; (b) on or before January 31, 2003 the sum that is equal to seventeen and one half percent (17½%) of the aggregate amount of unencumbered Cash on deposit in the deposit accounts in the name of Reorganized ETS as of December 31, 2002 to the extent such Cash exceeds the sum of two million dollars ($2,000,000), provided however, that the amount to be distributed pursuant to this clause (b) shall not exceed the sum of one and one-half million

5

dollars ($1,500,000); (c) on or before January 31, 2004, the sum that is equal to fifteen percent (15%) of the aggregate amount of unencumbered Cash on deposit in the deposit accounts in the name of Reorganized ETS as of December 31, 2003 to the extent such Cash exceeds the sum of two million dollars ($2,000,000), provided, however, that the amount to be distributed pursuant to this clause (c) shall not exceed the sum of one million dollars ($1,000,000); and (d) on or before January 31, 2005, the sum that is equal to fifteen percent (15%) of the aggregate amount of unencumbered Cash on deposit in the deposit accounts in the name of Reorganized ETS as of December 31, 2004, to the extent such Cash exceeds the sum of two million dollars ($2,000,000), provided, however, that the amount to be distributed pursuant to this clause (d) shall not exceed the sum of one million dollars ($1,000,000).

43.    *Holder* means a Person who owns, either legally or equitably, a Claim or Interest, including persons who hold legal title as custodians or trustees for the benefit of other Persons (including IRA custodians).

44.    *Impaired* means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

45.    *Interest* means equity security interest in ETS or the Debtor Affiliates pursuant to section 101(16) of the Bankruptcy Code.

46.    *Intercompany Claim* means any Claim held by ETS or a Debtor Affiliate against ETS or any other Debtor Affiliate.

47.    *Joint Plan* means the Joint Reorganization Plan submitted by Debtors and the Creditors' Committee and all exhibits and schedules annexed hereto or referenced herein, as it may be amended, supplemented or modified by Debtors and Creditors' Committee from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules, and the terms and conditions of Article VIII.D of the Joint Plan.

48.    *Litigation Trust* means the trust established on the Effective Date pursuant to Article IV.N of the Joint Plan for the purpose of investigating and prosecuting, through litigation or otherwise, all claims and causes of action of Debtors or Creditors' Committee existing as of the Petition Date against (a) Charles Edwards, (b) any insider of Debtors, (c) any Person provided that such claim or cause of action arises under or relates to sections 544, 547, 548, 549 or 550 of the Bankruptcy Code or theories of conversion, breach of fiduciary duty or fraud, (d) any Person provided that such claim or cause of action arises under or relates to Debtors' alleged violation of Federal and State Securities laws or the allegations set forth in the SEC Action, and (e) any Person provided such claim or cause of action arises in connection with or relates to Debtors' sale of payphones (f) any officer, director, agent, affiliate, spouse, insider, initial transferee or subsequent transferee of any of the Persons described in clauses (a) through (e) of this sentence, and any Person acting in concert with or under the direction or control of any of the Persons described in clauses (a) through (e) of this sentence.

49.    *Litigation Trust Allocation Formula* means the formula for allocating the Cash to be distributed by the Litigation Trust to Holders of Allowed Class 3 Claims and Allowed Class 4 Claims, which shall be applied as follows:

(a) the amount to be allocated to Class 3 Claims shall be determined by multiplying the aggregate amount of Cash to be distributed by the Litigation Trust by fifteen percent (15%); and

(b) the amount to be allocated to Class 4 Claims shall be determined by multiplying the aggregate amount of Cash to be distributed by the Litigation Trust by eighty-five percent (85%).

50. *Location Owner* means a Person that is an owner, agent, lessee, or manager (and their respective successors in interest) of real property that entered into a binding agreement with Debtors whereby Debtors would operate and manage payphones on such real property.

51. *Nondebtor Affiliates* means all affiliates of ETS as that term is defined in section 101(2) of the Bankruptcy Code of the Debtors that are not debtors in possession in the Chapter 11 Cases including, but not limited to, Twinleaf, Inc. and its subsidiaries including Legends Communications, Inc.

52. *Ordinary Course Professionals* means those professionals retained by Debtors pursuant to the Ordinary Course Professionals Order.

53. *Ordinary Course Professionals Order* means the order authorizing Debtors to retain and pay Ordinary Course Professionals entered by the Bankruptcy Court on November 22, 2000.

54. *Other Secured Claims* means the Secured Claims asserted by Persons other than Triangle Telephone Site Leases LLC and General Motors Acceptance Corporation.

55. *Old Stock* means any stock issued, or subject to issuance, by ETS Payphones, Inc. and authorized and outstanding immediately prior to the Distribution Record Date, and any items convertible into the stock of ETS Payphones, Inc.

56. *Payphone Investor* means a Holder of a Payphone Investor Claim.

57. *Payphone Investor Agreement* means the transactions and agreements between Debtors and Payphone Investors that became the subject of the SEC Action.

58. *Payphone Investor Claim* means a Claim asserted by or on behalf of a Person arising from or relating to (a) a lease or alleged lease of one or more payphones to Debtors pursuant to a written or oral agreement, regardless of whether the payphone equipment or location was specified in such agreement, together with all related agreements, including, without limitation, a bill of sale and a buy back agreement, (b) the payment of money to Debtors directly or indirectly (such as through one or more brokers, agents or intermediaries), with the expectation or understanding that such Person would become an owner of one or more payphones and would lease such payphones to Debtors, (c) the operation or management by Debtors of one or more payphones alleged to be owned by or on behalf of such Person or (d) an investment contract as defined in the Securities Act or Exchange Act other than any contract between Debtors and Charles E. Edwards or Larry Ginsburg.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS

The classification of the Claims and Interests listed below shall be for all purposes, including voting, confirmation and Distributions pursuant to this Joint Plan. A Claim or Interest is in a particular class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other classes. A Claim or Interest that is not an Allowed Claim or Interest is not in any class and does not receive any payments, Distributions or rights under this Joint Plan. Debtors and Creditors' Committee reserve the right to have any Claim or Interest reclassified as appropriate and to the extent permitted by the Bankruptcy Court. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Tax Claims are not classified in the Joint Plan.

A.  **Class 1 - Priority Non-Tax Claims.** Class 1 consists of all Allowed Priority Non-Tax Claims.

B.  **Class 2 - Secured Claims.** Class 2 consists of all Allowed Secured Claims. Class 2(a) consists of the Allowed Secured Claim of General Motors Acceptance Corporation. Class 2(b) consists of the Allowed Secured Claim of Triangle Telephone Site Leases, LLC. Class 2(c) consists of all Allowed Other Secured Claims.

C.  **Class 3 - General Unsecured Claims.** Class 3 consists of all Allowed General Unsecured Claims. Class 3(a) consists of all Allowed General Unsecured Claims other than the SEC Claim. Class 3(b) consists of the SEC Claim.

D.  **Class 4 - Payphone Investor Claims.** Class 4 consists of all Allowed Payphone Investor Claims.

E.  **Class 5 - Subordinated Claims.** Class 5 consists of all Allowed Subordinated Claims.

F.  **Class 6 - Intercompany Claims.** Class 6 consists of all Intercompany Claims.

G.  **Class 7 - Non-Debtor Affiliate Claims.** Class 7 consists of claims of any Nondebtor Affiliate against any Debtor.

H.  **Class 8 - Interests in ETS.** Class 8 consists of all Old Stock.

11

reduce its Class 4 Claim to $1.00 and have such Claim treated as an Allowed Alternative Claim by filing notice of such election on or before the Distribution Date.

Class 4 is impaired under the Joint Plan and is entitled to vote to accept or reject the Joint Plan.

5. Class 5: Subordinated Claims

Holders of Allowed Class 5 Subordinated Claims in full satisfaction, settlement, release and discharge of and in exchange for such Claim shall not receive any property or interest in property on account of its Allowed Class 5 Claim. Class 5 is deemed to have rejected the Joint Plan.

6. Class 6: Intercompany Claims

On the Effective Date, all Class 6 Intercompany Claims shall be extinguished through the substantive consolidation of the Debtors, and each Holder thereof shall not be entitled to and shall not receive or retain any property or interest in property on account of its Intercompany Claim. Class 6 is deemed to have rejected the Joint Plan.

7. Class 7: Non-Debtor Affiliate Claims

Each Holder of a Class 7 Claim in full satisfaction, settlement, release and discharge of and in exchange for such Claim shall not receive or reclaim any property or interest in property on account of its Class 7 Claim. Class 7 is deemed to have rejected the Joint Plan.

8. Class 8: Interests

On the Effective Date, the Class 8 Interests in Debtors shall be canceled, deemed extinguished, and each Holder of an Interest shall not be entitled to, and shall not, receive or retain any property or interest in property on account of such Class 8 Interest. Any certificate representing any Interest in ETS shall be of no force and effect. Class 8 is deemed to have rejected the Joint Plan.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE JOINT PLAN

A. Resolution of the Declaratory Judgment Action

Debtors must obtain a Final Order that Debtors are owners of all payphones and related assets which would otherwise be subject to the Payphone Investor Agreements in order to raise sufficient funds to reorganize Debtors and make the required payments under the Joint Plan. Debtors propose to settle the Declaratory Judgment Action by making the Payphone Investors the shareholders of Reorganized ETS. The occurrence of Effective Date is conditioned upon a successful resolution of the Declaratory Judgment Action, including pursuant to the terms outlined for treatment of Payphone Investor Claims set forth herein.

E.  **Payment of Administrative Claims**

Allowed Administrative Claims that are payable in Cash on the Effective Date shall be paid by Disbursing Agent on the Distribution Date.

F.  **Reserve for and Payment of Professional Fees**

On the Effective Date, Disbursing Agent shall reserve funds in the aggregate amount of all Compensation Estimates. Disbursing Agent shall pay Professional Fee Claims on the date such claims become Allowed Claims unless otherwise agreed to by Disbursing Agent and the Holder of such Professional Fee Claim.

Following the Effective Date, Disbursing Agent shall pay all professional fees when and as such professional fees become due and payable.

G.  **The Effective Date**

On the Effective Date, Debtors shall be substantively consolidated and shall be merged with and into Reorganized ETS. Immediately prior to the Effective Date, Debtors shall transfer to the Disbursing Agent all Cash necessary for the Disbursing Agent to make Distributions and establish reserves by this Joint Plan. Immediately after the Effective Date, Reorganized ETS shall issue to the Disbursing Agent all shares of Reorganized ETS Stock required to be distributed to or reserved for Holders of Class 4 Claims.

On the Effective Date, all Claims in Class 5, Class 6 and Class 7 shall be extinguished and discharged.

On the Effective Date, Class 8 Interests in ETS shall be canceled and extinguished, including, without limitation, the Old Stock of ETS.

H.  **The Distribution Date**

On the Distribution Date, the Disbursing Agent shall make Distributions to Holders of Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims pursuant to the terms of the Joint Plan.

On the Distribution Date, the Disbursing Agent shall make Distributions to (a) Holders of Allowed Class 3(a) Claims, the initial payment of the General Unsecured Distribution and the pro rata portion of the Litigation Trust allocated to Class 3 Claims pursuant to the Litigation Trust Allocation Formula and (b) Holders of Allowed Class 4 Claims, the pro rata portion of the five million shares of Reorganized ETS Stock and the pro rata portion of the Litigation Trust allocated to Class 4 pursuant to the Litigation Trust Allocation Formula pursuant to the terms of the Joint Plan.

I.  **Substantive Consolidation and Merger of Corporate Entities**

On the Confirmation Date the Debtors' Estates shall be substantially consolidated. Prior to the offer on or before the Effective Date Reorganized ETS will incorporate in Delaware and

17

ETS Payphones, Inc.; PSA, Inc.; ETS Vending, Inc.; Americom, Inc.; City Public Phones, Inc.; ETS Payphones of California, Inc.; ETS Management Services, LLC; MSC National, Inc.; S and R Telecommunications Consultants, Inc.; TSC Payphone Corp.; and Phoenix Telecom of Puerto Rico, Inc. will be substantively consolidated and immediately merged with and into Reorganized ETS.

Except as otherwise provided by the Joint Plan, upon the occurrence of any such merger, all assets of the merged entities, including, but not limited to, all payphones, automatic number identifiers, permits, certificates, franchises and operating rights shall be transferred to and become the assets of Reorganized ETS, and all liabilities of the merged entities, except to the extent discharged, released, extinguished or as otherwise provided by the Joint Plan and the Confirmation Order, shall be assumed by and shall become the liabilities of the surviving corporation.

The foregoing (a) shall be solely for the purposes of determining the right to Distributions under the Joint Plan; (b) shall not affect either the rights of any Holder of a Secured Claim with respect to the Collateral securing its Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Joint Plan; and (c) shall not, and shall not be deemed to, prejudice the claims, the proceeds of which are payable to the Litigation Trust, or Debtors or Reorganized ETS, which will survive entry of the Substantive Consolidation Order for the benefit of Debtors, their Estates, and Reorganized ETS as if there had been no substantive consolidation of Debtors and their Estates.

J.   Continued Existence of Reorganized ETS

1.   Merger of ETS and Debtor Affiliates

On the Effective Date, the following shall be deemed to have occurred and be effective, if applicable, and shall be authorized and approved in all respects, without any requirement of further action by the stockholders or directors of Debtors or Reorganized ETS, and with like effect as if such actions had been taken by unanimous action of the stockholders and directors of Debtors of Reorganized ETS, as applicable (a) ETS's articles of organization in effect under the laws of the State of Georgia prior to the Confirmation Date shall be amended to provide for merger into and with Reorganized ETS along with all other Debtor Affiliates, authorize the issuance of the shares of Reorganized ETS Stock, prohibit the issuance of non-voting stock, provide for no less than three or more than five directors and to name the initial Board of Directors of the Reorganized ETS; and (b) the distribution of Cash and Reorganized ETS Stock by the Disbursing Agent in accordance with the Joint Plan and Confirmation Order; and (c) the implementation of the other matters provided for under the Joint Plan or any other corporate action necessary for or required by the Joint Plan. A copy of the Articles of Incorporation of Reorganized ETS Inc. is attached as Exhibit 3.

Reorganized ETS shall continue to exist to carry on the business of Debtors as Reorganized ETS, a Delaware corporation. Reorganized ETS shall be registered as a foreign corporation doing business in each state where it is expected to operate.

2.  Board of Directors of Reorganized ETS

The board of directors of Reorganized ETS shall consist of up to five members, which shall include Mr. Longobardo as Chairman, Mr. Michael Buck, Mr. Michael Scott and two additional directors to be named by Creditors' Committee prior to the Effective Date. Except as otherwise provided in the Joint Plan, the Board of Directors of Reorganized ETS shall appoint the officers and other managers, and shall have the responsibility for the management, control, and operation of Reorganized ETS on and after the Effective Date consistent with the Articles of Incorporation and By-Laws of Reorganized ETS.

N.  The Litigation Trust

A Litigation Trust shall be created on the Effective Date for the benefit of Holders of Allowed Class 3 General Unsecured Claims and Allowed Class 4 Payphone Investor Claims. The Litigation Trust shall be administered by a trustee selected by the Creditors' Committee on or before the tenth day before the Confirmation Date and the trust agreement governing the Litigation Trust shall be filed as part of the Plan Supplement. The Litigation Trust Agreement shall provide, among other things, (i) for the trustee to make distributions as and when funds are available and in the trustee's sole discretion; (ii) that the life of the Litigation Trust shall be the later of the conclusion of the prosecution of Debtors' and Creditors' Committee's claims and causes of action and three years (subject to extension upon approval of the Bankruptcy Court); (iii) that the trustee shall have the power to waive the attorney client privilege on behalf of Debtors and Creditors' Committee; (iv) the trustee's fees and expenses may be satisfied from the proceeds of the Litigation Trust, payment by Reorganized ETS or otherwise; (v) the trustee shall be considered a "party in interest" with the ability to request an examination pursuant to 2004 of the Federal Rules of Bankruptcy Procedure; (v) the trustee shall be entitled to employ counsel or other professionals; (vi) the trustee shall make available to any Holder of a Claim or any other party in interest in the Chapter 11 Cases a yearly accounting of the Litigation Trust; and (vii) shall be entitled to invest funds of the Litigation Trust in a manner consistent with the investment and deposit guidelines of section 345 of the Bankruptcy Code. The Litigation Trust shall be funded with property and other proceeds of all claims and causes of action of Debtors or Creditors' Committee existing as of the Petition Date against (i) Charles Edwards, (ii) any insider of Debtors, (iii) any Person provided that such claim or cause of action arises under or relates to sections 544, 547, 548, 549 or 550 of the Bankruptcy Code or theories of conversion, breach of fiduciary duty or fraud, (iv) any Person provided that such claim or cause of action arises under or relates to Debtors' alleged violation of Federal and State Securities laws or the allegations set forth in the SEC Action, and (v) any Person provided such claim or cause of action arises in connection with or relates to Debtors' sale of payphones (vi) any officer, director, agent, affiliate, spouse, insider, initial transferee or subsequent transferee of any of the Persons described in clauses (i) through (v) of this sentence, and any person acting in concert with or under the direction or control of any of the Persons described in clauses (i) through (v) of this sentence. Notwithstanding the foregoing, proceeds realized from potential claims and causes of action of Debtors arising after the Petition Date or related to prepetition breeches of contract, Debtors' interest in NYLT, Debtors' investment in Mexico, Debtors' interest in the EUCL litigation and similar litigation shall not become part of the Litigation Trust but shall remain property of Debtors or Reorganized ETS.