IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PSA, Inc. | ) | |
|     Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | CIVIL ACTION No. 04-389-KAJ |
| Inter-World Communications, Inc.,<br>Corpserve, S.A. de C.V., World Center<br>of Video Conferences, S.A. de C.V.,<br>Dean Hollis Velazco, and John Remke, | )<br>)<br>)<br>)<br>)<br>) | |
|     Defendants. | )<br>) | |

### PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND AMEND CAPTION

ETS Payphones, Inc., the successor-in-interest to plaintiff PSA, Inc. (the "Plaintiff"), responds to the objection (the "Objection") of defendants Corpserve, S.A. de C.V. ("Corpserve") and Dean Hollis Velazco ("Hollis"; with Corpserve, the "Objecting Defendants") to Plaintiff's motion to amend its complaint and amend the case caption (the "Motion to Amend").

### SUMMARY OF ARGUMENT

The Objecting Defendants raise three arguments, all of which overlook very strong Third Circuit precedent favoring liberal amendment of complaints. The first argument is that ETS Payphones, Inc. ("ETS") is a separate party from the original plaintiff, a subsidiary of ETS named PSA, Inc. ("PSA"), and is not a successor in interest to PSA. This argument is incorrect for one simple reason acknowledged by the Objecting Defendants in their recitation of the facts (but overlooked in their argument): ETS's chapter 11 plan of reorganization, confirmed after the instant lawsuit was filed, merged PSA into ETS, and vested all of PSA's assets in ETS. Thus, ETS owns the causes of action before the Court, and is the proper plaintiff.

The Objecting Defendants' second argument is that by enumerating certain of the contracts referred to by subject matter in paragraphs 17 and 48 of the original complaint, the Plaintiff has somehow expanded the scope of its original lawsuit. The logical flaw in this argument is self-evident. In its original complaint, the Plaintiff alleged at paragraph 48:

> [Plaintiff] and IWCI, Hollis and Remke entered into contracts relating to the formation, funding and operation of a joint business venture involved in the Mexican pay telephone business.

In its amended complaint, the Plaintiff simply followed this same sentence with the following sentence:

> These formation, funding and operational agreements between the Plaintiff and Hollis, Remke and IWCI included, without limitation…

The amended complaint then listed nine specific contracts that had been referred to generally in the original complaint – all of which "related to the formation, funding and operation of the joint business venture," and all of which appear to have been executed by the parties and their affiliates during a two-month period in late 1998. The amendment thus provides some specificity to the original contract claims, but does not expand the scope of the original complaint one iota.

Finally, the Objecting Defendants complain that the amendment was untimely and prejudicial. The motion to amend, however, was made pursuant to this Court's scheduling order dated February 4, 2005, which gave the parties until April 30, 2005 in which to file motions to amend or supplement their pleadings. (April 30 being a Saturday, under the rules the deadline rolled over to Monday, May 2.) The Objecting Defendants never uttered a word of protest about the Court's scheduling order during the conference call with Magistrate Judge Thynge on April 6, nor did they move to reconsider the Court's scheduling order or reduce the time to amend pleadings. Relying on the Court's scheduling order, the Plaintiff amended its complaint on May

2. Moreover, a large part of the delay in prosecuting this case stemmed from (a) the Objecting Defendants' insistence upon formal service in Mexico under the Hague Convention, notwithstanding their participation in the lawsuit by filing affidavits; (b) the Objecting Defendants' evasion of formal service in Mexico; and (c) the Objecting Defendants' procedural motions to dismiss for insufficiency of process, to abstain in favor of an unnamed court in the Republic of Mexico, and to withdraw the reference and remove the case to this Court. Given the efforts of the Objecting Defendants to throw up procedural roadblocks to the lawsuit, they should not be heard to complain that amendment of the complaint is untimely.

Finally, the Objecting Defendants' position is at odds with the very strong pronouncements from the Third Circuit liberally favoring leave to amend.

## ARGUMENT

### I.   THE AMENDED COMPLAINT DOES NOT INSERT A NEW PARTY.

Prior to 2002, ETS was originally the parent company of PSA, the original plaintiff. Both filed for chapter 11 protection in September of 2000, and their cases were administratively consolidated. During the bankruptcy case, ETS and PSA proposed a joint plan of reorganization (the "Chapter 11 Plan"), which, as the Objecting Defendants concede, provided that "[o]n the Confirmation Date the Debtors' estates shall be substantively consolidated." Objection, at ¶ 4. As the Objecting Defendants also acknowledge, the Chapter 11 Plan provided further that ETS and PSA would be merged into a reorganized ETS, and that all assets of PSA would be transferred to this reorganized ETS.[1]  *Id.*  Thus, ETS owns the causes of action against the defendants formerly owned by PSA. ETS is the correct plaintiff, and should be substituted.

---

[1] As the Objecting Defendants correctly acknowledge, the confirmed Plan became effective on December 5, 2002.

The Objecting Defendants' argument is that the stock of PSA somehow survived the chapter 11 case, and that one provision of the Chapter 11 Plan (Article III, section B.8), which extinguished pre-bankruptcy ETS stock, did not also extinguish PSA stock. This overlooks the fact that PSA's cause of action against the Objecting Defendants was transferred to ETS under the language recited here. Moreover, this incomplete analysis overlooks Article IV, section R of the Chapter 11 Plan, which states: "On the Effective Date, except as otherwise provided for in the Joint Plan: (i) any existing Interests and securities, to the extent not already canceled, shall be canceled..." *See* Exhibit "A" (Chapter 11 Plan, at 21). "Interests" is defined in the Chapter 11 Plan as "equity security interests[s] in ETS or the Debtor Affiliates..." *Id.* (Chapter 11 Plan, at 6). "Debtor Affiliates" is defined to include PSA. *Id.* (Chapter 11 Plan, at 4). Thus, the Objecting Defendants are incorrect when they assert that there is somehow a theoretical entity known as PSA that survived the court-ordered merger into ETS.

## II. THE AMENDED COMPLAINT DOES NOT EXPAND THE SCOPE OF THE ORIGINAL COMPLAINT.

The original complaint alleged, among other things, that "[Plaintiff] and IWCI, Hollis and Remke entered into *contracts relating to the formation, funding and operation of a joint business venture* involved in the Mexican pay telephone business." *See* Motion to Amend, Exhibit B (redline of original complaint against amended complaint), at 8 (emphasis supplied). The Objecting Defendants never moved for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, and there is no basis for imposing any heightened pleading requirement in an action for breach of contract. Thus, all Federal Rule of Civil Procedure 8(a) required of the original complaint was a "short, plain statement."

The amended complaint simply lists certain of the specific "contracts relating to the formation, funding and operation of a joint business venture involved in the Mexican pay

4

telephone business," and describes how those "contracts relating to the formation, funding and operation" were breached. *See* Motion to Amend, Exhibit B, at 8-9. While it provides specificity to the more general allegations of paragraphs 17 and 48 of the original complaint, it does not attempt to expand the scope of the lawsuit beyond the allegations of the original complaint.

The Objecting Defendants also allege, without any support, that "[t]he agreements which the Plaintiff seeks to add to the complaint go beyond, and may not be related to, the 'agreement to form a joint business venture and other related agreements,' the claim asserted in paragraph 17 of the Complaint." Objection, at ¶ 13. No rationale for this conclusion is offered. Indeed, the very names of the agreements listed in the amended complaint (for instance, "Memorandum of Understanding for a Joint Venture Agreement"), the identities of the parties (ETS affiliates and the Objecting Defendants and their affiliates), and the dates of the contracts (all dated copies executed between October 17 and November 20, 1998) clearly indicate that the listed contracts are precisely the agreements referred to in paragraphs 17 and 48 of the original complaint.

Moreover, as discussed in Section IV, the Third Circuit has unequivocally taken the position that any doubt on this point should be construed liberally in favor of allowing the Plaintiff to amend the original complaint.

### III. THE MOTION TO AMEND THE COMPLAINT IS TIMELY UNDER THE COURT'S SCHEDULING ORDER.

The last argument is that the Motion to Amend is untimely. However, the Court's February 4, 2005 scheduling order expressly permitted motions to amend to be filed until April 30, 2005. Under Federal Rule of Civil Procedure 6(a), the April 30 deadline, which fell on a Saturday, rolled over to the following Monday, May 2, the date the Plaintiff filed the Motion to

Amend. The Objecting Defendants never asked the Court to reconsider this deadline, and should not be permitted to object to the Court's February 5 order retroactively.

Additionally, there is no substance to the Objecting Defendants' timeliness complaint, as most of the delay in this case is attributable to the defendants' evasion of service in Mexico, their motion to dismiss for lack of service, their motion to abstain, and their motion to withdraw the reference to bankruptcy court. After the lawsuit was filed, the Plaintiff attempted to serve the Objecting Defendants. The Objecting Defendants refused to waive service, and evaded attempts to serve them in Mexico. Using an affidavit filed in this case by defendant Dean Hollis Velazco, the defendants moved to dismiss the case for insufficiency of process, or in the alternative, to abstain in favor of an unspecified court in the Republic of Mexico. The motions remained pending for some time; bankruptcy court denied the motion to dismiss in February 2003, and denied the motion to abstain in December 2003.[2] In May 2004, the Objecting Defendants filed another procedural motion, this time to remove the reference to bankruptcy court; the Plaintiff agreed not to oppose this motion on July 2.[3] The motion to withdraw the reference was granted in January 2005, and in February 2005 the Court set this case on a definitive pretrial schedule. During this time, settlement talks among the parties continued. Thus, the delay in prosecuting

---

[2] The February 21, 2003 order denying the motion to dismiss for insufficiency of process provided: "Plaintiff shall endeavor to serve Defendants Corpserv, S.A. de C.V., World Center of Video Conferences, S.A. de C.V., Dean Hollis Velazco, and John Remke pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial Document in Civil or Commercial Matters. If Plaintiff complies with the requirements for service pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, then service of process shall be deemed sufficient and Defendants shall be prohibited from asserting insufficiency of service of process as cause to dismiss the action." The Plaintiff complied with the Hague Convention's requirements by submitting a Spanish translated copy of the Complaint and Summons and a request for service to the Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos in Mexico City. Ultimately, the Objecting Defendants still managed to evade personal service in Mexico. However, under the bankruptcy court's February 21, 2003 order, service is sufficient.

[3] Contrary to the Objecting Defendants' assertion that the Plaintiff "waited months to even notify the Defendants that it would not object to the Motion to Withdraw the Reference," correspondence between the parties indicates that the defendants agreed to a three and a half week extension of ETS's response deadline, until July 2, 2004, during which time settlement talks were going on between the parties. There was no dilatory action on the part of the Plaintiff.

this case was largely occasioned by the filing of multiple procedural motions by the Objecting Defendants.

Finally, there is no reason that amendment of the complaint now will prejudice the Objecting Defendants. They assert that they have spent "a great deal of time, effort and money preparing their case and its defenses based solely upon the claims asserted in the Complaint...as well as focusing defenses on the named Plaintiff..." Objection to Motion to Amend, at ¶ 17. But the Objecting Defendants have not served a single discovery request, requested a single deposition, or otherwise given any outward appearance of an effort to prepare defenses against the merits of the case. Moreover, it is hard to see what they would have done differently had the amendment been filed while the Objecting Defendants' various procedural motions were pending. The argument that "a great deal of time, effort and money" has been spent preparing defenses against PSA (rather than ETS), and against contract claims *other* than those contracts listed in the amended complaint, must be taken with some skepticism in light of the Objecting Defendants' exclusive focus on procedural roadblocks.

### IV. THE OBJECTING DEFENDANTS' POSITION IS INCONSISTENT WITH THIRD CIRCUIT LAW.

The amended complaint lists by name contracts referred to in the original complaint. The amendment is nothing more than an amplification of the original complaint. This Court and other district courts within the Third Circuit have repeatedly held that amplification of an original claim is one of the clearest cases in which the liberal amendment policies of Rule 15(a) should be given full effect. *See, e.g., Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp. 2d 411, 419 (D. Del. 2005) (Simandle, J.) ("Typically a plaintiff will not be prejudiced, in this sense, by permitting a defendant to cure an insufficient defense or to amplify a defense that has been stated in the answer."); *Lake v. Caricement, V.I., Inc.*, 2003 WL 23218485 (D. V.I. Mar. 25,

2003) ("Allowing amendments which amplify existing pleadings furthers the objectives of the federal rules that cases should be determined on their merits."); *France Telecom S.A. v. Novell, Inc.*, 2002 WL 31355255 (D. Del. Oct. 17, 2002) (Sleet, J.) ("'The clearest cases for leave to amend are correction of an insufficient claim or defense and amplification of previously alleged claims or defenses.'") (quoting *U.S. v. Teeven*, 1992 WL 683682 (D.Del. Oct. 27, 1992)); *Pegasus Dev. Corp. v. Direct TV, Inc.*, 2002 WL 598457 (D. Del. April 18, 2002) (Sleet, J.) (same); *Downing Properties Assoc. v. The Great Atlantic & Pacific Tea Co., Inc.*, 2001 WL 827576 (E.D. Pa. July 23, 2001) ("Motions to amend under Fed. R. Civ. P. 15(a) may be filed to cure a defective pleading, to correct insufficiently stated claims, to amplify a previously alleged claim, to change the nature or theory of the case....").

This permissiveness towards amendments that amplify allegations from prior pleadings makes perfect sense in the context of the Third Circuit's liberality towards amendments of pleadings under Rule 15(a). *See, e.g., Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings should be liberally granted."); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("Leave to amend 'shall be freely given when justice so requires.' Fed. R. Civ. P. 15. Although refusals to grant leave to amend are reviewed for abuse of discretion, it is an abuse of discretion to deny leave to amend unless 'plaintiff's delay in seeking amendment is undue, made in bad faith, prejudicial to the opposing party, or [the amendment] fails to cure the jurisdictional defect.'") (case citations omitted); *United States v. Thomas*, 221 F.3d 430, 435 (3d Cir. 2000) ("The purpose of Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. This is demonstrated by the emphasis Rule 15 placed on the permissive approach that district courts are to take to amendment requests, no matter what their character may be[.]'"); *Berkshire Fashions,*

*Inc. v. M.V. Hakusan II,* 954 F.2d 874, 886-87 (3d Cir. 1992) ("[T]he district court's exercise of discretion...should be exercised within the context of liberal pleading rules.") (citations omitted).

District and bankruptcy courts within the Third Circuit have likewise acknowledged the liberal nature of the notice pleading requirement, and have not hesitated to allow amendments that elaborate upon prior pleadings. *See, e.g., Russoli v. Salisbury Township,* 126 F.Supp. 2d 821, 829 (E.D. Pa. 2000) (citing *Berkshire* for the proposition that "the discretion [to allow amendments] should be exercised within the context of liberal pleading rules."); *United States v. Somers Constr. Co.,* 184 F.Supp. 563, 567 (D.Del. 1960) ("'Recognizing that the entire spirit of the rules is to the effect that controversy shall be decided on the merits, courts have not been hesitant to allow amendments for the purpose of presenting the real issues of the case, where the party has not been guilty of bad faith, is not acting for purposes of delay, the opposing party will not be unduly prejudiced or the trial of the issues unduly delayed.'"); *Miller v. USA Waste Servs., Inc. (In re Eagle Enterps., Inc.),* 259 B.R. 73, 80 (Bankr. E.D. Pa. 2001) ("Courts historically are liberal in the exercise of their discretion to permit amendments."); *Gallick v. United States,* 542 F.Supp. 188, 190 (M.D. Pa. 1982) ("'Notice pleading necessarily requires that a complaint be liberally construed."). This practice is also consistent with the liberal nature of the Federal Rules of Civil Procedure. *See, e.g., Ratcliffe v. Insurance Co. of N. Am.,* 482 F.Supp. 759, 762-63 (E.D. Pa. 1980) ("It is well settled that 'the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits...'"). The pro-amendment bias embodied in Rule 15 is so strong that the rule can be used to escape the otherwise absolute bars imposed by jurisdictional statutes and statutes of limitations. *See, e.g., Berkshire,* 954 F.2d at 887 ("We know of no absolute prohibition against asserting another basis for jurisdiction in an amendment to a pleading, provided that such jurisdiction would have

9

existed at the time the complaint was originally filed."); *Moore v. Allstate Ins. Co.*, 928 F.Supp. 744, 752-53 (N.D. Ill. 1996) ("Rule 15(c) and relation-back apply to amendments that change the plaintiff's theory of recovery, as long as the new and different theory of recovery arises out of the conduct alleged in the original complaint."). The Objecting Defendants' position runs counter to these well-established lines of case law that govern Third Circuit practice.

## CONCLUSION

For the foregoing reasons, the Plaintiff requests that the Court overrule the objection to the Motion to Amend and grant leave to amend the Complaint.

Dated: May 19, 2005
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Sean M. Beach
Brendan Linehan Shannon (No. 3136)
Sean M. Beach (Bar No. 4070)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone:   (302) 571-6600
Facsimile:    (302) 571-1253

-AND-

KING & SPALDING LLP
191 Peachtree Street
Jonathan W. Jordan
Atlanta, Georgia 30303
Telephone:   (404) 572-4600
Facsimile:    (404) 572-5149

10

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                  )
                                        )   CASE NO. 00-3570 (JCA)
PSA, INC.,                              )
ETS PAYPHONES, INC.,                    )   CHAPTER 11
ETS VENDING, INC., ET AL.,              )   (JOINTLY ADMINISTERED
                                        )   Case Nos. 00-3570 through
                                        )   00-3572 and 00-3718 through
              Debtors.                  )   00-3725)

## FIRST AMENDED JOINT REORGANIZATION PLAN SUBMITTED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

E. Penn Nicholson
Shannon Lowry Nagle
POWELL, GOLDSTEIN,
FRAZER & MURPHY LLP
Sixteenth Floor
191 Peachtree Street, N.E.
Atlanta, GA 30303
Telephone: (404) 572-6600
Telecopier: (404) 572-6999

- and -

Brendan Linehan Shannon (No. 3136)
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
1100 N. Market Street, 11th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

Kirk L. Brett
DUVAL & STACHENFELD LLP
300 East 42nd Street
Third Floor
New York, New York 10017
Telephone: (212) 883-1700
Telecopier: (212) 883-8883

- and -

Frederick B. Rosner (No. 3995)
WALSH MONZACK & MONACO P.A.
400 Commerce Center
1201 Orange Street
Wilmington, Delaware 19801
Telephone: (302) 656-8162
Telecopier: (302) 656-2769

Counsel for the Official Committee
of Unsecured Creditors

Dated: July 25, 2001

24. *Debtor Affiliates* means the debtors, other than ETS whose cases are jointly administered with ETS, including PSA, Inc.; ETS Vending Inc.; Americom, Inc.; City Public Phones, Inc.; ETS Payphones of California, Inc.; ETS Management Services, LLC; MSC National, Inc.; S and R Telecommunications Consultants, Inc.; TSC Payphone Corp.; and Phoenix Telecom of Puerto Rico, Inc.

25. *Debtors* means the eleven debtors and debtors in possession in these Chapter 11 Cases, consisting of ETS and the Debtor Affiliates.

26. *Declaratory Judgment Action* means Adversary Proceeding No. A-01-4711, *PSA, Inc., and ETS Payphones, Inc. v. John T. Woodley, et al.*, filed by Debtors against the Payphone Investors.

27. *Disbursing Agent* means an entity to be designated by Debtors and Creditors' Committee not less than ten (10) days prior to the hearing on confirmation of the Joint Plan, which entity shall be approved by the Bankruptcy Court.

28. *Disclosure Statement* means the disclosure statement filed by Debtors and Creditors' Committee, as it may be amended, modified or supplemented (and all exhibits or schedules annexed thereto or referenced therein), filed with respect to the Joint Plan and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

29. *Disclosure Statement Summary* means any summary of the Disclosure Statement approved by the Bankruptcy Court.

30. *Disputed Claim* means a Claim against Debtors, as to which an objection (including any proceeding seeking subordination of such Claim) or a motion pursuant to section 502 of the Bankruptcy Code has been timely filed by any party in interest and which objection or motion has not been withdrawn or overruled or denied by a Final Order. To the extent such objection or motion relates to the allowance of any part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. Prior to the time that an objection has been or may be timely filed, for the purposes of the Joint Plan, a Claim may be considered a Disputed Claim to the extent that the amount, classification, nature or other basis thereof of the Claim specified in the proof of Claim and or exceeds either the amount, classification, nature or other basis of the Claim scheduled by Debtors.

31. *Disputed [class or category] Claim* means a Disputed Claim in the particular Class or category of Claims identified.

32. *Disputed Claims Reserve Accounts* means the escrow accounts maintained by the Disbursing Agent as described in Article VI of the Joint Plan.

33. *Distributions* means the Cash, shares of Reorganized ETS Stock, or proceeds of the Litigation Trust to be distributed or reserved in accordance with the Joint Plan.

34. *Distribution Date* means (a) with respect to a Claim that is an Allowed Claim as of the Effective Date, a date occurring as soon as practical after the Effective Date, upon which Distributions are to be made by the Disbursing Agent to Holders of Allowed Claims, and that is

4

dollars ($1,500,000); (c) on or before January 31, 2004, the sum that is equal to fifteen percent (15%) of the aggregate amount of unencumbered Cash on deposit in the deposit accounts in the name of Reorganized ETS as of December 31, 2003 to the extent such Cash exceeds the sum of two million dollars ($2,000,000), provided, however, that the amount to be distributed pursuant to this clause (c) shall not exceed the sum of one million dollars ($1,000,000); and (d) on or before January 31, 2005, the sum that is equal to fifteen percent (15%) of the aggregate amount of unencumbered Cash on deposit in the deposit accounts in the name of Reorganized ETS as of December 31, 2004, to the extent such Cash exceeds the sum of two million dollars ($2,000,000), provided, however, that the amount to be distributed pursuant to this clause (d) shall not exceed the sum of one million dollars ($1,000,000).

43. *Holder* means a Person who owns, either legally or equitably, a Claim or Interest, including persons who hold legal title as custodians or trustees for the benefit of other Persons (including IRA custodians).

44. *Impaired* means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

45. *Interest* means equity security interest in ETS or the Debtor Affiliates pursuant to section 101(16) of the Bankruptcy Code.

46. *Intercompany Claim* means any Claim held by ETS or a Debtor Affiliate against ETS or any other Debtor Affiliate.

47. *Joint Plan* means the Joint Reorganization Plan submitted by Debtors and the Creditors' Committee and all exhibits and schedules annexed hereto or referenced herein, as it may be amended, supplemented or modified by Debtors and Creditors' Committee from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules, and the terms and conditions of Article VIII.D of the Joint Plan.

48. *Litigation Trust* means the trust established on the Effective Date pursuant to Article IV.N of the Joint Plan for the purpose of investigating and prosecuting, through litigation or otherwise, all claims and causes of action of Debtors or Creditors' Committee existing as of the Petition Date against (a) Charles Edwards, (b) any insider of Debtors, (c) any Person provided that such claim or cause of action arises under or relates to sections 544, 547, 548, 549 or 550 of the Bankruptcy Code or theories of conversion, breach of fiduciary duty or fraud, (d) any Person provided that such claim or cause of action arises under or relates to Debtors' alleged violation of Federal and State Securities laws or the allegations set forth in the SEC Action, and (e) any Person provided such claim or cause of action arises in connection with or relates to Debtors' sale of payphones (f) any officer, director, agent, affiliate, spouse, insider, initial transferee or subsequent transferee of any of the Persons described in clauses (a) through (e) of this sentence, and any Person acting in concert with or under the direction or control of any of the Persons described in clauses (a) through (e) of this sentence.

49. *Litigation Trust Allocation Formula* means the formula for allocating the Cash to be distributed by the Litigation Trust to Holders of Allowed Class 3 Claims and Allowed Class 4 Claims, which shall be applied as follows:

O.  **Employment Agreements**

On the Effective Date, Employment Agreements with Guy A. Longobardo and Michael H. McClellan in forms substantially identical to those in Exhibit 5 shall become effective.

P.  **Revesting of Assets**

On the Effective Date, the property of each of the Estates, together with any property of a Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Joint Plan, shall revest in and/or otherwise become property or asset of Reorganized ETS without the need for any further Bankruptcy Court order or act by Debtors or Reorganized ETS. Thereafter, Reorganized ETS may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Bankruptcy Court. As of the Effective Date, all property of Debtors shall be free and clear of all claims and interests, except as specifically provided in the Joint Plan or the Confirmation Order. All licenses, franchises, certificates, automatic number identifier operating permits and other licenses owned by Debtors shall become property of and be transferred to Reorganized ETS without further order of the Bankruptcy Court.

Q.  **Effectuating Documents; Further Transactions**

Debtors and Reorganized ETS shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms, and conditions of the Joint Plan. Although not required, Reorganized ETS may elect to file documents of transfer or such other name change information it deems necessary, in its sole discretion, to reflect the revesting of the assets of Debtors in Reorganized ETS.

R.  **Cancellation of Securities and Agreements**

On the Effective Date, except as otherwise provided for in the Joint Plan: (i) any existing Interests and securities, to the extent not already canceled, shall be canceled; and (ii) the obligations of Debtors under such existing securities and under Debtors' certificate of incorporation, any agreements or certificates of designations governing such existing securities will be discharged. On the Effective Date, all Payphone Investor Agreements shall be canceled.

S.  **Exemption From Certain Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers: (i) for any of Debtors to Reorganized ETS or any other Person or entity pursuant to the Joint Plan; or (ii) from Reorganized ETS to any other Person or entity pursuant to the Joint Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and all appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2005, I electronically filed a true and correct copy of **Plaintiff's Reply to Defendants' Opposition to Motion for Leave to File Amended Complaint and to Amend Caption** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Kathleen J. Campbell, Esq.
> Marla R. Eskin, Esq.
> Campbell & Levine
> 800 North King Street
> Suite 300
> Wilmington, DE 19801

I further certify that on May 19, 2005, I served the **Plaintiff's Reply to Defendants' Opposition to Motion for Leave to File Amended Complaint and to Amend Caption** on the following non-registered participants in the manner indicated below:

BY FIRST CLASS U.S. MAIL
John Remke
303 Wyndam Drive
Portola Valley, CA 94028

> /s/ Sean M. Beach
> _____
> Sean M. Beach (No. 4070)
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> P.O. Box 391
> Wilmington, DE 19899-0391
> (302) 571-6681
> sbeach@ycst.com
> bank@ycst.com
>
> *Attorneys for Plaintiff*