IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                                    )
PSA, Inc.                           )
                                    )
            Plaintiff,              )
                                    )        Civil Action No. 04-389-KAJ
        v.                          )
                                    )
Inter-World Communications, Inc.,   )
Corpserve, S.A. de C.V., World      )
Center of Video Conferences, S.A.   )
De C.V., Dean Hollis Velazco, and   )
John Remke,                         )
                                    )
            Defendants.             )
_____)


## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT


                        Marla Rosoff Eskin  (No. 2989)
                        CAMPBELL & LEVINE, LLC
                        800 King Street
                        Suite 300
                        Wilmington, DE 19899
                        302-426-1900


Date: November 15, 2005          Attorney for Dean Hollis Velazco and
                                 Corpserve, SA de CV

## TABLE OF CONTENTS

Table Of Authorities…………………………………………………………………ii

I.    Statement of the Nature and Stage of the Proceedings……………………………1

II.   Summary of the Argument……………………………...……………………………2

III.  Statement of the Facts…………………….…………………………………………3

IV.   Standard of Review…………………………………………………………………..7

V.    Argument…………………………………………………………….……………...8

    I.    Summary Judgment must be granted as any recovery in this case will not be for the benefit of the estate as required by 11 U.S.C. §550(a) ………………………8

    II.   Summary Judgment must be granted as Plaintiff is judicially estopped from bringing this action by the failure to disclose the claims asserted herein in the First Amended Joint Reorganization Plan……………………………………..   11

    III.  This action should be dismissed because Plaintiff has failed to effectuate service of process in the 38 months since the Complaint was filed, and should therefore, be dismissed under either Rule 4 or Rule 41(b), Fed.R.Civ.Proc. ……………...14

    Conclusion…………………………………………………………………….………18

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Burlington Motor Carriers, Inc. v. MCI Telecommunications,
 (In re Burlington Motor Holdings, Inc.), 231 B.R. 874 (Bankr. D. Del. 1999) . . . . . . . . . . . . . 9

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Crowley, Milner and Company, 299 B.R. 830 (Bankr. E.D.Mich. 2003) . . . . . . . . . . . . . 12

Crysen/Montenay Energy Company v. E&C Trading, Ltd.
 (In re Crysen Montenay Energy Company), 166 BR, 546 (S.D. N.Y. 1994) . . . . . . . . . . . 16, 17

Fireman's Insurance Co. of Newark v. DuFresne, 676 F.2d 965 (3d Cir. 1982) . . . . . . . . . . . 7

Harstad v. First American Bank, 39 F.3d 898 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 8, 13, 14

Insilco Technologies, Inc., at al. 330 B.R. 512 (Bankr. De 2005) . . . . . . . . . . . . . . . . . . . . . . . 10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . 7

Montalbano v. Easco Tools, Inc., 766 F.2d 737 (2 Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NVF Company v. New Castle County, 276 B.R. 340 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . 8

Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1988) . . . . . . . . . 11, 12

O'Rouke Brothers, Inc. v. Nesbitt Burns, Inc., 201 F.3d 948 (7th Cir. 2000) . . . . . . . . . . . . . . 17

Petrowax P.A., Inc. v. C&C Petroleum & Chemicals Group, Inc.,
 200 B.R. 538 (Bankr. De 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Resorts International, Inc., 372 F.3d 154 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re: Southbold Development Corp., 148 B.R. 726 (E.D. N.Y. 1992) . . . . . . . . . . . . . . . . . . . . 16

Wellman v. Wellman, 933 F.2d 215 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Westland Oil Dev. Corp. v. Mcorp Mgmt. Solutions, Inc.,
 157 B.R. 100 (S.D.Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 7

**OTHER REFERENCES**

11 U.S.C. §541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11 U.S.C. §542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

11 U.S.C. §544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

11 U.S.C. §548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

11 U.S.C. §550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 10, 13

11 U.S.C. § 1123(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11 U.S.C. § 1125(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

28 U.S.C.§1367(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Rule 7004(a) Fed.R.Bankr.Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Federal Rules of Civil Procedure Rule 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Federal Rules of Civil Procedure Rule 4(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Federal Rules of Civil Procedure Rule 4(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

Federal Rules of Civil Procedure Rule 4(j)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Civil Procedure Rule 4(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Federal Rules of Civil Procedure Rule 41(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17, 18

Federal Rules of Civil Procedure Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## <u>STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS</u>

On September 10, 2002, PSA filed an adversary Complaint in the Bankruptcy Court that initiated the present action. The Complaint asserts claims arising out of a failed joint venture between PSA and certain of the Defendants to operate pay telephones in Mexico. PSA sought to recover approximately $9 million on theories of turnover of property of the estate, fraudulent conveyance, breach of contract and conversion.

On August 24, 2005, after objection from the Defendants, the Plaintiff filed an amended complaint, substituting the name of the Plaintiff[1] and adding to the Complaint certain contracts.

Pursuant to the extension granted by the Court, dispositive motions must be filed by November 15, 2005.

---

[1] ETS has been substituted as the Plaintiff in this case, however, the Plaintiff has been referred to as PSA in this brief.

## II.  SUMMARY OF THE ARGUMENT

I.      Summary Judgment must be granted as any recovery in this case will not be for the benefit of the estate as required by 11 U.S.C. §550(a)

II.     Summary Judgment must be granted as  Plaintiff is judicially estopped from bringing this action by the failure to disclose the claims asserted herein in the First Amended Joint Reorganization Plan

III.    This action should be dismissed because Plaintiff has failed to effectuate service of process in the 38 months since the Complaint was filed, and should therefore, be dismissed under either Rule 4 or Rule 41(b), Fed.R.Civ.Proc.

### III.  STATEMENT OF THE FACTS

On September 11 and 21, 2000, eleven related entities filed Chapter 11 petitions with the Clerk of the Bankruptcy Court for this District (the "Bankruptcy Court").  One of those entities was ETS Payphones, Inc. ("ETS"), and another was PSA, Inc. ("PSA").  Pursuant to the Bankruptcy Court's Order of December 20, 2000, those eleven cases were jointly administered.

On July 25, 2001, the Debtors along with the unsecured creditors' committee filed a First Amended Joint Reorganization Plan (the "Plan").  On November 14, 2001, the Bankruptcy Court entered an Order confirming the Plan.  The Plan (excerpts of which are attached hereto as Exhibit "A") provided for the creation of a Litigation Trust, from which allowed unsecured claims would be paid.  (Exhibit A, Plan at 20).  The Plan specifically provided that

> "…proceeds realized from potential claims and causes of action of Debtors arising after the Petition Date or related to prepetition breaches of contract, Debtors' interest in NYLT, Debtors' investment in Mexico, Debtors' interest in the EUCL and similar litigation shall not become part of the Litigation Trust <u>but shall remain property of Debtors or Reorganized ETS</u>."  (emphasis added).

(Exhibit A, Plan at 20).  Thus, the foregoing makes clear that the proceeds of the enumerated claims and causes of action, including actions related to "investments in Mexico," do not become part of the Litigation Trust.  This portion of the Plan does not, however, specify whether those claims remain property of the prepetition entities that originally owned them, or become part of the reorganized entity created by the Plan.

The Plan goes on to provide that "[o]n the Confirmation Date the Debtors' Estates shall be substantially consolidated."  (Plan at 17) and that on or before the Effective Date, ETS Payphones, Inc.; PSA, Inc.; ETS Vending, Inc.; Americom, Inc.; City Public Phones, Inc.; ETS Payphones of California, Inc.; ETS Management Services, LLC; MSC National, Inc.; S and R Telecommunications Consultations, Inc.; TSC Payphone Corp.; and Phoenix Telecom of Puerto

Rico, Inc. will be substantively consolidated and immediately merged with and into Reorganized ETS. (Plan at 18). Consistently, the Plan also provides that "upon the occurrence of any such merger, all assets of the merged entities….shall be transferred to and become the assets of Reorganized ETS." Id. Thus, it is clear that at least up to the Effective Date, each of the previously enumerated claims and causes of action remained the property of the respective individual Debtors that owned them prepetition. Subsequent to plan confirmation, December 5, 2002 was declared to be the Effective Date.

On September 10, 2002, PSA filed an adversary Complaint in the Bankruptcy Court that initiated the present action. The Complaint asserted claims arising out of a failed joint venture between PSA and certain of the Defendants to operate pay telephones in Mexico. Out of the eleven Chapter 11 Debtors, PSA was the only one that was a party to any of the contracts which form the basis of the claims asserted in this action. In its 5-Count Complaint, PSA sought to recover approximately $9 million on theories of turnover of property of the estate, fraudulent conveyance, breach of contract and conversion.

On September 17, 2002, an agent of PSA filed a Certificate of Service stating that the first Summons (dated September 17, 2002), a copy of the complaint, and a copy of the Notice of Dispute Resolution Alternatives were sent, in part, by "Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to: Corpserve, SA de CV, Sinaloa #10, Colonia Roma, Mexico D F C P 06400, [and] World Center of Video Conferences, SA de CV, Pueblo #237, Colonia Roma, Mexico D F C P 06700."

On October 1, 2002, an agent of the Plaintiffs filed a Certificate of Service which stated that the second Summons (dated October 1, 2002), a copy of the complaint, and a copy of the Notice of Dispute Resolution Alternatives were sent, in part, by "Mail service: Regular, first

class United States mail, postage fully pre-paid, and via Certified Mail Service with return receipt requested addressed to: John Remke, 303 Wyndam Drive, Portola Valley, CA 94028 and Dean Hollis Velazco, 5812 North 12th Street, Phoenix, AZ 85014." [2]

The address used by PSA to attempt service of process upon Mr. Hollis in Phoenix, Arizona is, also, not a valid location upon which to complete service of process as it is not Mr. Hollis' dwelling house or usual place of abode, or the place where he regularly conducts a business or profession. At the time, Mr. Hollis had not lived at that address for over seventeen years. In addition, that address was never used by Mr. Hollis to regularly conduct a business or profession. As stated in the Complaint, Mr. Hollis is also a resident of Mexico. Furthermore, Corpserve is a Mexican corporation that was formed to engage in the business of installing, maintaining, and operating pay phones in Mexico. Accordingly, in the event that PSA obtains a judgment in this case, it will have to execute on that judgment in Mexico.

On January 8, 2003, Defendants filed a Motion to Dismiss for Insufficiency of Service of Process and to Abstain Pursuant to 28 U.S.C. §1334(c)(1). On December 8, 2003, the Bankruptcy Court denied Defendants' Motion to Abstain. Previously, on February 21, 2003, the Bankruptcy Court had entered an order denying Defendants' Motion to Dismiss, but ordering PSA to serve the Defendants pursuant to the Hague Convention. It is noteworthy, however, that as of the date that the present Motion is being filed, which is 38 months after the Complaint was filed and 33 months after the Bankruptcy Court's Order directing service under the Hague Convention, PSA has been so disinterested in prosecuting this case that it still has not properly effected service of process on the Defendants pursuant to the Hague Convention. PSA has not served the Complaint pursuant to the Hague Convention, notwithstanding the Bankruptcy Court's February 21, 2003 Order directing it to do so. (Exhibit F).

---

[2] Counsel represents only defendants Dean Hollis and Corpserve.

On June 18, 2004, Defendants filed a Motion to Withdraw the Reference. PSA did not object to the relief sought, and the Motion to Withdraw the Reference was granted by this Court on January 11, 2005.

On May 2, 2005, more than 2 ½ years after the Complaint was filed and almost 3 ½ years after the Plan was confirmed, ETS filed a Motion for Leave to Amend the Complaint, which seeks, inter alia, to "restyle" the Complaint, by substituting the reorganized, post-Chapter 11 entity, ("Reorganized ETS") for PSA as the Plaintiff in this action. On May 12, 2005, Defendants filed an opposition to this Motion. The Motion was granted on August 24, 2005 (Docket No. 44).

# IV. <u>STANDARD OF REVIEW</u>

Summary Judgment is appropriate if the motion, supported as indicated in Fed.R.Civ.Proc. 56(c), "shows that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c). "Only disputes of fact that might affect the outcome of the lawsuit under governing substantive law are material." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Furthermore, disputes are "genuine" only if evidence exists to support both sides. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Material and genuine factual disputes are not created by a plaintiff's conjecture, speculation, or hypothetical reasoning. <u>Matsushita</u>, 475 U.S. at 586; <u>Fireman's Insurance Co. of Newark v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982).

The plaintiff must present affirmative evidence to support the elements of his *prima facie* case under the applicable substantive law. <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989). The purpose of summary judgment is to dispose of legally or factually unsupported claims. If no affirmative evidence exists, a trial would be futile and the defendant, therefore, is entitled to judgment as a matter of law.

In the case at hand, there are no issues of material fact, and thus the Defendants are entitled to Summary Judgment.

**ARGUMENT**

**I.    Any Recovery Obtained In This Case Will Not Be For
the Benefit of The Estate**

Count I of the Complaint asserts that certain property allegedly in the possession of
Defendants is property of the estate under 11 U.S.C. §541 and seeks the turnover of this property
pursuant to 11 U.S.C. §542.  However, it is well-settled that confirmation of a plan of
reorganization, which in this case occurred before the Adversary Complaint was even filed,
dissolves the bankruptcy estate.  In re Resorts International, Inc., 372 F.3d 154 (3d Cir. 2004;
NVF Company v. New Castle County, 276 B.R. 340 (D. Del. 2002); Harstad v. First American
Bank, 39 F.3d 898, 904 (8th Cir. 1994) ("The rule is that the estate is dissolved upon
confirmation of the Plan").  Accordingly, because there is no longer an estate, Count 1 which
seeks turnover of property of the estate cannot survive.

The second count of the Complaint seeks the recovery of certain amounts pursuant to 11
U.S.C. §§544 and 548, on the theory that they were fraudulent conveyances.  Eleven U.S.C.
§550 provides for the recovery of any transfer that is avoided under a number of other Code
provisions, including Sections 544 and 548.  Section 550, however, only provides for such
recovery if it is "for the benefit of the estate."  Again, if there is no longer an estate because the
Plan was confirmed 4 ½ years ago, the recovery cannot be for the benefit of the estate.  Wellman
v. Wellman, 933 F.2d 215, 218 (4th Cir. 1981) (Courts considering the issue, however, have, with
unanimity, concluded that a trustee or a debtor-in-possession of a bankruptcy estate cannot
maintain an avoidance action under § 548 unless the estate would be benefited by the recovery of
the transferred property.)

In <u>Burlington Motor Carriers, Inc. v. MCI Telecommunications</u>, (<u>In re Burlington Motor Holdings, Inc.</u>), 231 B.R. 874 (Bankr. D. Del. 1999), the Bankruptcy Court for this District considered whether a post-bankruptcy reorganized entity could pursue a preference action. Under the terms of the confirmed plan, the success or failure of the preference action would not effect the amount paid to unsecured creditors.  Reasoning that "any recovery of preferences in this case will benefit only the Successor Corporation," <u>Id</u>. at 877, the Court held that "under §550(a), the successor Corporation is without standing to sue to avoid the alleged preference…" <u>Id</u>. at 877.

Similarly, in the present case, any recovery obtained by PSA will not be paid to unsecured creditors and will only be for the benefit of PSA.  While the Plan cancels the outstanding stock of ETS (Exhibit A, Plan at Art. II, §B, ¶8 at 14), it clearly does not cancel the stock of PSA, which, therefore survived confirmation.  Moreover, as set forth above, the Plan provides for the post-confirmation merger and consolidation of the Debtors and their estates (Exhibit A, Plan at 17-18), but there is a specific carve-out of this merger/consolidation for the claims asserted here.  (Exhibit A, Plan at 18, subparagraph (c) of second full paragraph ).  The net effect is that PSA continues to exist, post-confirmation, the claims asserted here continue to exist post-confirmation and those claims continue to be owned by PSA.  One hundred percent of the prepetition stock of PSA was owned by ETS.  Thus, any recovery in this action will be for the benefit of the prepetition shareholders of ETS, not for the benefit of creditors.  The foregoing conclusion is consistent with the Plan provision which sets the last distribution to unsecured creditors for January 31, 2005.  (Exhibit A, Plan at Art. I, §A, ¶42 at 6).  As that date has passed, there can be no further distribution to unsecured creditors.

Reorganized ETS also lacks standing to prosecute this action because any recovery would benefit only Reorganized ETS.  It is true that the Shareholders of Reorganized ETS are the Payphone Investors, who were unsecured creditors of the Debtors.  However, any benefit accruing to them as a result of a recovery in this action, is extremely attenuated, especially when compared to a cash distribution.  More importantly, there are thousands of other unsecured creditors who have no interest whatsoever in Reorganized ETS.  It is clear that a recovery in this action by Reorganized ETS would still not in any way benefit this substantial set of the unsecured creditors of the eleven original Debtors.  Count 2 simply cannot be pursued due to a lack of standing of either PSA or ETS arising under Section 550(a).

Out of the five counts asserted in the Complaint, Counts 1 and 2 are the only ones arising under federal law.  The dismissal of Counts 1 and 2, as requested above, would leave only state law claims of breach of contract and conversion.  Under 28 U.S.C. §1367(c), this Court could then, in its discretion, decline to exercise supplemental jurisdiction over those claims. See, Petrowax P.A., Inc. v. C&C Petroleum & Chemicals Group, Inc., 200 B.R. 538 (Bankr. De 1996) (dismissing remaining state law claims after dismissing, for lack of standing, post-confirmation turnover adversary.); and Insilco Technologies, Inc., at al. 330 B.R. 512 (Bankr. De 2005) (finding that state law claims which arose pre-petition and pursued post-petition do not have a close nexus to the plan and are not within the postconfirmation "related to" jurisdiction). Accordingly, Defendants, in additional requesting that Counts 1 and 2 be dismissed for lack of standing under Section 550(a), also hereby request that the remaining state law claims be dismissed, as well.

II.    **PSA is Equitably and Judicially Estopped from
       Prosecuting this Adversary Action**

Even assuming, arguendo, that any recovery in this case would be for the benefit of the estate, this action must still be dismissed under the theories of equitable estoppel and judicial estoppel, because the Debtors did not adequately disclose in the Plan the existence of the claims asserted herein.

Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1988) involved an action for breach of contract and fraudulent misrepresentation brought by a former Chapter 11 debtor against a bank. This complaint, arising from events that preceded the plaintiff's bankruptcy petition, was filed approximately seven months after confirmation of the plaintiff's reorganization plan.

The trial court granted the bank's motion to dismiss, reasoning that the failure of plaintiff to disclose in its plan the plaintiff's claim against the bank barred the plaintiff from proceeding with the action. The Court of Appeals affirmed, articulating two bases for this holding. First, the Court focused on the requirement of 11 U.S.C. § 1125(b) that a disclosure statement contain "adequate information." Finding that neither the plan, nor the accompanying disclosure statement disclosed the existence of the claims against the bank the Court characterized them as "informationally deficient," because they failed to apprise the creditors of the former Chapter 11 debtor of the potential benefits to them resulting from the successful prosecution of those claims. The Court held that this failure of disclosure equitably estopped the plaintiff from pursuing the claims.

The Court of Appeals buttressed this conclusion by reference to the additional theory of judicial estoppel, which the Court described as follows:

> This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation.

848 F.2d at 419.

The Court concluded that the plaintiff's failure to disclose its claims against the bank undermined the integrity of the judicial system that the doctrine of judicial estoppel was intended to protect. It held that judicial estoppel barred the claims against the bank, as well.

In the present case, as in <u>Oneida</u>, the Plan and its accompanying Disclosure Statement failed to disclose the claims presently being asserted in this action, and for the same reasons as articulated in <u>Oneida</u>, this action too, must be dismissed. The only hint in the Plan to the claims against Defendants is the following oblique reference, quoted <u>supra</u> at 2:

> Notwithstanding the foregoing. proceeds realized from potential claims and causes of action of Debtors arising after the Petition Date or related to prepetition breeches of contract, Debtors' interest in NYLT, **Debtors' investment in Mexico**, Debtors' interest in the EUCL litigation and similar litigation shall not become part of the Litigation Trust but shall remain property of the Debtors or Reorganized ETS. (emphasis added).

(Exhibit A, Plan at 20)

This, however, is clearly insufficient to satisfy the Debtors' obligation under 11 U.S.C. § 1125(b) to provide "adequate information." In the words of another court addressing this issue:

> Creditors and other parties in interest could not reasonably have been expected to deduce from this passage that there were causes of action against [defendant] that would be pursued post-confirmation and that created measurable value for creditors and other parties in interest.

<u>In re Crowley, Milner and Company</u>, 299 B.R. 830, 850 (Bankr. E.D.Mich. 2003)

See also, Westland Oil Dev. Corp. v. Mcorp Mgmt. Solutions, Inc., 157 B.R. 100, 103 (S.D.Tex. 1993) ("[Debtor] knew about the claim, was mad about it, and hid it within the murky language of the general retention clause.").

Particularly, given the magnitude of the claims being pursued herein, the failure to properly disclose them is unforgivable.  Unsecured creditors might very well have had a different view of the Plan if they had known of the potential for an additional $9 million cash infusion into the estate.[3]

The Disclosure Statement that accompanied the Plan is also informationally deficient.  In addition to the veiled reference to "Debtors' investment in Mexico" that was also present in the Plan, the Disclosure statement also states that:

> Debtors and Creditors' Committee anticipate that a variety of preferential and fraudulent conveyances of Debtors' property were made prior to the Petition Date.  An investigation of such conveyances, and potential recoveries under sections 544,547, 548, 549 and 550 of the Bankruptcy Code is currently underway including an investigation by Creditors' Committee's forensic accountant.

Disclosure Statement at 22. (Excerpts attached as Exhibit B).

It has been held, however, in a related context, that a mere statement that claims are being evaluated is not sufficient.  The disclosure statement at issue in Harstad v. First American Bank, 39 F.3d 898 (8th Cir. 1994), contained the following language, which was the only reference to preferential transfers in the disclosure statement:

> Debtors and the Committee of Unsecured Creditors have not yet completed the analysis of pre-petition preferential transfers subject to avoidance under 11 U.S.C. § 547.  Debtors do not know at the present time whether or not there are any avoidance preferential transfers.

---

[3] Defendants' argument that any recovery will not be for the benefit of creditors, dovetails well with their position that the existence of this claim was not disclosed to unsecured creditors, at all.

Id. at 901.[4]

The Harstad court held that the "not yet completed the analysis" language was insufficient to reserve for the debtors, under 11 U.S.C. § 1123(b)(3), the right to pursue the claims that were at issue. By analogy, the phrase "an investigation of such conveyances and potential recoveries…is currently underway" contained in the present Disclosure Statement, is insufficient as a disclosure of the $9 million claim asserted against the present Defendants.

Significantly, PSA also failed to list the claim against Defendants in Schedule B of its Bankruptcy Schedules, thereby exacerbating the problem of non-disclosure. (Exhibit C). ETS, the party that has now been substituted for PSA as the Plaintiff in this action, also did not disclose the present claims on its Schedule B. (Exhibit D). It did, however, list "EUCL litigation estimated at $29,000 and Claims Against Former Officers and Directors Estimated over $10,000,000.00" (Exhibit D at 2). Thus, Debtors PSA and ETS, between them, managed to schedule a $29,000 claim but fail to disclose a $9 million claim that they then hid in the murky retention language of their Plan and Disclosure Statement.

Due to this lack of disclosure, PSA should be equitably and judicially estopped from pursuing this action.

## III.    PSA Has Still Not Effected Service of Process.

Service of process under the Federal Rules of Civil Procedure is governed by Rule 4. Rule 4(f) specifies the procedure for service of individuals in a foreign country, and Rule 4(m) sets forth the time limit for service. Rule 7004(a) Fed.R.Bankr.Proc., in turn incorporates for

---

[4] The Harstad court wryly observed that "just three months after the Plan was confirmed, the Harstads evidently had 'completed the analysis of pre-petition transfers,' because they filed adversary proceedings in the Bankruptcy Court seeking avoidance and recovery of approximately $841,850.00 in alleged preferential transfers."

application in adversary actions most of Rule 4, including those subsections that are relevant here.

Rule 4(m) Fed.R.Civ.Proc. provides for a 120-day period after the filing of the complaint for the plaintiff to serve the summons and the complaint on each defendant. Rule 4(m) provides further, however, that this time limitation does not apply to service in a foreign country pursuant to Subsection 4(f), which governs service of individuals in a foreign country, and subsection 4(j)(1), which deals with service upon a foreign, state or political subdivision and is, therefore, not relevant here.

Rule 4(f) requires service under internationally agreed means, such as the Hague Convention. Rule 4(h) provides that service on a corporation, in a place not in any judicial district of the United States must be in any manner prescribed for individuals under subsection 4(f), thereby making Rule 4(f) applicable to foreign corporations as well as foreign individuals..

It is undisputed that PSA's initial attempt to serve Hollis was by mailing a copy of the Complaint and a summons on October 1, 2002, to an obsolete address in Arizona and that its initial attempt to serve Corpserve was by mailing the summons and complaint to an address in Mexico. PSA has conceded that neither of these efforts satisfies Rule 4 (See January 21, 2003 transcript at 7 – Exhibit E) and the Bankruptcy Court's Order of February 21, 2003 directing PSA to serve all of the defendants pursuant to the Hague Convention, confirms the inadequacy of PSA's prior attempt at service. (Exhibit F). The Plaintiff claims that it later attempted to serve the Defendants[5] under the Hague convention. However, the Plaintiff has never succeeded in serving either Corpserve or Hollis, and appears to not have even attempted to do so after one attempt under the Hague convention. Thus, Corpserve and Hollis have never been served with this complaint.

Although the exemption from the 120-day requirement may to apply to PSA, this action must still be dismissed for PSA's failure to serve the Defendants.  Even in cases where an exemption from the120-day limit did not apply,[6] the courts have nevertheless recognized that: "the mere fact that Congress exempted foreign service from the 120-day requirement, does not give litigants an unlimited time in which to complete service."  Crysen/Montenay Energy Company v. E&C Trading, Ltd. (In re Crysen Montenay Energy Company), 166 BR, 546, 553 (S.D. N.Y. 1994).

Prior to the 1982 adoption of the 120-day provision of Rule 4, the courts had applied a "flexible due diligence" standard to assess the timeliness of service, generally.  Many of the courts that have placed a limitation on the time for service on foreign defendants have utilized that standard.  Crysen/Montenay, 166 B.R. at 522.  See also Travers, supra, at *1 ("where service is in a foreign country, the Court uses a flexible due diligence standard to determine whether service of process was timely.").

Defendants respectfully submit that irrespective of the particulars of any "flexible due diligence" analysis this Court might apply, PSA's conduct in this case fails to satisfy it.  See eg In re:  Southbold Development Corp., 148 B.R. 726, 730 (E.D. N.Y. 1992) ("Under this flexible due diligence standard, courts generally refused to dismiss cases where the delay was in the range of two to three months…")  Thus, even if the 120-day period does not apply, this action, in which the delay has been in over three years, must be dismissed for PSA's blatant lack of diligence in serving Defendants.

There is another basis for dismissing this action:

---

[5] It is not known it the Plaintiff attempted to serve both Corpserve and Hollis under the Hague convention.
[6] Courts have held that there is an exemption to the 120 rule only where there has been an attempt to effectuate service under the Hague Convention.  Montalbano v. Easco Tools, Inc., 766 F.2d 737 (2 Cir. 1985).

> In certain circumstances, a plaintiff's dereliction in not obtaining service may lead beyond Rule 4 and head off into territory covered by Rule 41(b). We said, "If the delay [in obtaining service] has been so long that it signifies failure to prosecute—or if the delay entails disobedience to an order of the court—then dismissal may be with prejudice under rule 41(b), which covers 'failure of the plaintiff to prosecute or to comply with these rules or any order of court.'"

O'Rouke Brothers, Inc. v. Nesbitt Burns, Inc., 201 F.3d 948, 953 (7th Cir. 2000).  Rule 41(b) allows for a dismissal with prejudice for failure to prosecute or for a failure, to comply within the Federal Rules of Civil Procedures or to comply with any order of Court.  In the present case, all three of these bases for dismissal are present.  Clearly, PSA has failed to prosecute this action, as it has not complied with the Bankruptcy Court's Order directing it to serve Defendants under the Hague Convention.  In Crysen/Monteny, the Court initially denied without prejudice defendant's motion to dismiss for failure to serve.  Service under the Hague Convention was not actually completed until 2 ½ years after the Complaint was filed.  On appeal of the Bankruptcy Court's subsequent dismissal of the action, the district court stated:

> Accordingly, this Court agrees with the bankruptcy court's assessment that a two and a half year delay between the time of filing and the time of service, included in which was a fourteen month stretch of inactivity,[7] demonstrates dilatoriness on the part of appellant.  Accordingly, this Court affirms the bankruptcy court's dismissal for failure to prosecute.

166 B.R. at 552.

If a two and a half year delay between filing and successful service of a complaint is sufficient to warrant a dismissal under Rule 4(b), then here, where 38 months has already elapsed since the filing of the Complaint without service being effected, the Complaint should be

---

[7] In this case, there was similarly a delay in activity.  The Plaintiff did not respond to the Motion to Withdraw Reference and took no action after that time.  Ten months after the motion was filed, it was Defendants' counsel who contacted the Court so that the case could proceed.

dismissed.  Accordingly, Defendants respectfully request that, in the alternative, this Court

dismiss this action with prejudice under Rule 41(b).

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that this action be

dismissed.

Date:   November 15, 2005                Respectfully submitted

                                        CAMPBELL & LEVINE, LLC


                                By:    /S/ Marla Rosoff Eskin
                                       Marla Rosoff Eskin (No. 2989)
                                       800 King Street
                                       Suite 300
                                       Wilmington, DE 19899
                                       302-426-1900

                                       Attorney for Dean Hollis Velazco and
                                       Corpserve, SA de CV